Good morning, Your Honors. Edward Horowitz, representing the appellants City of Los Angeles and Bernard Parts. I'd like to focus, if I may, subject to the Court's interest, on why the judgment should be reversed as a matter of law for three independent reasons. The first being that there was no causation shown as a matter of law. Second, that there was probable cause to arrest the plaintiff officers and charge them. And thirdly, that there was no official policy of the City of Los Angeles shown to violate the officers' constitutional rights, again, as a matter of law. The overall context, as the record shows here, particularly because of all the evidence of other matters that came in, when this rampart scandal broke, the LAPD, Los Angeles Police Department, would have been damned if it had done nothing. It was then damned for the actions that it took. And here, worse even, the LAPD was damned for an independent decision made by another public agency that had the right and duty and the only right, the L.A. County District Attorney. Was it really independent? Was it really independent? Yeah. Yes, Your Honor. That, the record shows, is undisputed. All of the witnesses, who, by the way, were all called by the plaintiffs, testified, including the District Attorney himself, Mr. Garcetti, the lead prosecuting attorney, Ms. Lysecki, that they made their own independent determination, that they did their own investigation. They had their own investigation. They were members of the task force, right? No. The DA wasn't part of the task force? No. The task force was only the LAPD members. It was ordered to be set up by Chief Parks, and I think ---- Was the DA involved in any way in the task force, the work of the task force? Their work, in many respects, paralleled that of the task force, but ---- Did they work in conjunction? Many witnesses were interviewed both by, as I recall the record, both by members of the task force and by the District Attorney investigators. In addition, the Deputy District Attorneys did their own work, and in addition, as Ms. Lysecki testified, that they even presented or came up with evidence by presenting witnesses to the grand jury, which, of course, the LAPD had no part of. Only the District Attorney goes to the grand jury, and that Ms. Lysecki also testified without dispute. Now, wasn't there evidence also at trial that Parks made telephone calls to ---- To District Attorney Garcetti, yes. And I think there's two facts that are significant there. One was that the calls never specified these particular police officers. The calls, in fact, began several months before these officers were formally arrested and charged and before the investigation of these officers began. I think the evidence showed that the investigation started only a couple months before they were charged because this informant ---- Now, your argument is that as a matter of law, the jury could not find causation. That means that your argument is that there's only one ---- that the evidence only allowed one finding, no causation. Yes, that was ---- That's your argument. But I don't see how you can say that on this record. I'm saying it because the evidence is undisputed that the District Attorney's office ---- But there was other evidence that suggested more than just that. In other words, there was ---- Well ---- As I read the record, there was evidence that would go either way, and the jury found causation. The jury found causation, but the evidence ---- The jury found ---- did not permit that finding as a matter of law. But there was other evidence in the record. I assume counsel ---- I mean, just because the DA got up on the stand and testified that I made this purely independent determination, first, the jury didn't have to believe her. Two, there was other evidence in the record, and it was really a call for the jury to make. I don't think so. So I think the cases, the cases including this Court's cases, say that where there is an independent investigation, an independent determination, not just less than an investigation, but an independent determination, and particularly where there's a separate independent investigation, and there's no showing that a contrary decision would have been made by the prosecuting agency, the District Attorney, and there was no such showing here, that the District Attorney would not have prosecuted this case but for the ---- any improper pressure placed on it or improper evidence presented to the District Attorney, unknowingly by the ---- here, the LAPD. Well, there was quite a story that was told to the jury about all this investigation, about what it meant and what they were up to  One of our arguments is that the evidence, much of the evidence that, in my view, clearly inflamed the jury and explains the result, was that the district court judge allowed evidence of other administrative proceedings, proceedings involving other officers, proceedings involving or evidence involving whether this officer, the informant Perez, could have been impeached and so forth, and yet the District Attorney and the prosecuting attorneys, Lysakki and so forth, testified without contradiction that they did not rely on anything Perez said at all. And as a matter of fact, when the case went to trial, they didn't even present Perez as a witness, and neither did the other side, so that this case would have been filed regardless of what the LAPD did, because the District Attorney did the entire investigation by itself. But they were working in conjunction. I mean, the evidence shows that they were working in conjunction with the other, with the LAPD task force. It shows that. And it allowed the jury, it was the jury's task to look at all the evidence that was presented and to decide. Was there causation? Well, I would suggest that there's no case authority, certainly none cited by the appellees, that says that merely working in conjunction with the ---- Let me ask you this, Mr. Horowitz. My understanding has been primarily, we start off with the notion that causation is basically a question of fact. Yes. Correct? Yes. Now, I grant you, you know, you can always, the evidence can be such that's presented to a jury, or even on summary judgment. You could conclude that what's here would not allow any other determination other than what you're advocating for, which was that there could be no possible causation here. But that's not, I don't read the record here that way. At least I don't. I mean, you know, there was lots of evidence that was presented in this. How long did this trial take place? How long was the trial? Yeah. I think it was, the actual trial was seven or eight days. And there's a fair amount of evidence that was presented to the jury. That's correct. And there was competing views about what happened here, and the jury drew a conclusion. They made a finding of fact based on, I think they even got a special verdict here, if I'm not mistaken. They did, breaking it down by the causes of action, and was this a cause, and was damage suffered, and so forth. But our position is, and although the trial was seven or eight days, it only focused on the investigations, the LAPD investigation it focused on quite a bit. But it did not focus very much on what the district attorney did, because it was very clear what the district attorney had done. It was a very simple presentation by the defense, and it should have led to a summary judgment. It should have led to a granting of the Rule 50 motion. It should have led to a granting of the trial. Well, you know, for whatever reason, the district court found at summary judgment there were tribal issues of fact, because causation is generally a factual dispute. And he let the case go to trial. Well, this case is one of the ones that's different in our view. And I would like to await opposing counsel's recitation of evidence he believes shows that the LAPD's role was a material, we're not talking about insignificant or inconsequential, the rule says material factor in the LAPD's role. And I think the jury was instructed that one of the requirements for causation was that plaintiff's injury or damage was either a direct result, which I submit is totally out of the question here, or a reasonably probable consequence of the act or omission. And when the testimony of the district attorney himself, who says, I was getting pressure from Chief Parks, says, but I specifically told him we would make our own determination of this in due course, and that's what we did. And when the lead deputy district attorney says, one, that she was not told by the district attorney that Parks was putting pressure on him to file, that she and her other deputies and the investigators made their own investigation and made their own determination of this. And when the LAPD's role was a material, we would make our own determination of what charges to file and when to get the arrest warrants and so forth. Under these circumstances, I just must... Did you want to address your time at the end? Sure. Probable cause, again, if there is probable cause, it's a matter of law based on the undisputed facts. The facts weren't undisputed, as I understand. Well, much of the facts involved the tape recording of the radio transmissions, it involved the documents, and it involved testimony, excuse me, testimony as to what the investigation showed. And I would submit that if you look at all of the examples of the facts showing probable cause, it's a matter of law based on the undisputed facts. And there is also probable cause which were arrayed in our opening brief at pages 44 to 50 as a matter of law, which this court has done in many other cases, finding of, yes, there was probable cause as a matter of law. It comes up here in a slightly different context because the defendants are not, you know, criminals who are out committing robberies. There are different rules that apply in this context. But the same rules, the same rules... They're not identical rules. Correct, yeah. They're not. The rule of law is the same. The rule that, yes, in a Section 1983 action it goes to the jury. Right. And you're under Rule 50B at this point, a judgment as a matter of law, which means there's only one possible conclusion that the jury could make. Correct. No probable cause. But that would be the same standard, as I see it, that an appellate court would make reviewing a district court's determination of probable cause. That's a little bit different. Yes, as far as finding... The jury's function in this kind of case, unlike the judge's function if there's a motion to suppress evidence or whatever, the jury makes the credibility determinations. But what the record shows here is that there were numerous examples of facts that would lead a reasonable officer, or in this case a reasonable district attorney or whatever, to reasonably conclude that a crime may have been committed, the basic test of probable cause. The communications time notations conflicted with the arrest report, I believe, written by Officer Liddy. The helicopter pilot, there was a lot of testimony about that, said he would not have taken credit. He would have taken credit for assisting in the arrest if he had been on the scene and shined his light on this fellow Lobos, leading to Lobos saying that I give up, which was the way it was written in the report, when in fact, at least according to the helicopter pilot and his spotter or whatever, that that was not what happened. Liddy's explanation that the tape, the communications tape, did not include all of his communications, because he made some on a frequency that does not get taped, was contradicted by evidence that it didn't make sense to use this other limited frequency under the circumstances. Now, the other side was entitled, as they did at trial, to say we want the jury to draw inferences that are different from the inferences that were drawn for the purposes of probable cause. But the focus is on probable cause and not what other inferences might be. In the 1983 case, we let the jury make that finding, that determination. Yes. Unless as a matter of law. We just don't ask them, find the factual, what do you call it, special findings. We don't do that. And then the court makes the legal determination. We send a question of probable cause to the jury. The court defined a probable cause to the jury. And the jury, at least by implication, found that. They found it directly. I mean, they answered the question on the special verdict. Yes. Yes. But by implication, that there was no probable cause. And the complaint, the Fifth Amendment complaint, the operative complaint, also said there was a constitutional rights violation of denial of due process, which I think we've addressed in the briefs, that just doesn't apply here. Nothing clear here about the due process. But if I understand your questions correctly, Judge Paez, you seem to be stating that there's a different standard of review. No. Well, we're under Rule 50A, a judgment as a matter of law. Or B, I'm sorry, Rule 50B, because this is after trial. And that's your argument, as a matter of law, under Rule 50B, if you take all the evidence that was presented to the jury, and you draw all inferences, you know, you don't resolve any credibility fines, but you look everything in favor of the jury's verdict, that they could only come to one conclusion. Yes. And on probable cause. And one conclusion they could come to, the only possible conclusion they could have come to was there's no probable cause here. But there was competing evidence. There was competing evidence that allowed them to draw different inferences. And they came up with a conclusion that said there was probable cause. And, you know, if there are competing conclusions, and the jury picks the one you're unhappy with, it's pretty tough for us to overturn it. Well, I would respectfully state that the jury's determination of probable cause was not to draw inferences from facts that were undisputed in the record, namely that, for example, the communications tape showed these events happened at these particular times. They cannot say, well, the LAPD and the DA should have drawn the conclusion that those times were wrong, as the defense urged, and they presented evidence and so forth, which presumably they presented at the trial, the criminal trial, and obtained a verdict of not guilty, at least on the basis of reasonable doubt. The jury has to assume, for purposes of probable cause, that this tape, no one's disputing the tape had been doctored or anything, that the only reasonable inference from that was an inference that showed no probable cause. And all of the other things, the facts that were rated, that the jury doesn't get to basically to make a guilt or innocence. They didn't make a guilt or innocence finding here. They were instructed on probable cause, and nobody, as I understand it, there was no dispute over the jury instructions. There's no challenge to the jury instructions here on appeal. So I assume from that that everybody concedes that the jury was properly instructed, and then the question was applying those instructions to the evidence, and the evidence, whether you like it or not, was not all one way. And the jury drew a particular, made a particular determination. No probable cause. And unless we can say that that was the only possible, that the only possible ruling the jury could have come up with was, you want to say that there was probable cause, then, you know, you should win. But that's not what I see in the record here. And I don't speak for anybody else. I mean, I'm just my own. Well, I guess I just, you know, most respectfully disagree that the jury, the jury's verdict may not or should not be upheld because the jury drew a contrary inference or two or ten here from inferences that supported probable cause from facts that are undeniable in the record. But what's the role of the jury here, though? The role of the jury is, one, to determine credibility. But I'm relying on facts that were not disputed. So credibility is not an issue. The role of the jury is, then, to take the court's instruction on the classic definition of probable cause and say, did, was probable cause here, did probable cause exist here because of the, even in spite, or even in spite of the fact that there was probable cause? Or because of the discrepancies with the tape, because of the other discrepancies? Because if Liddy had seen Lobos hide the gun, as he said in his arrest report, then why did he, why did they have to question people as to whose gun it was? Why did he state that he gave instructions to pick up the gun to Officer Perez, when, in fact, the record shows without question that Officer Mejia found the gun in his office. And so forth. Now, this is evidence that was undisputed, and this were from witnesses called by, and documents called by the plaintiffs. And then the plaintiffs get up and argued to the jury basically the same argument that they would have made at the criminal trial. And as to this is, you know, you can't show this beyond a reasonable doubt, and they just said the same argument applies to probable cause. Now, they didn't say that. You're over your time, Mr. Horwitz, but I'll give you a minute or two for rebuttal. May it please the Court, Jeffrey Ehrlich for the plaintiffs. I wanted to start with the standard review, because the city has doggedly said that this is a de novo review case. It clearly isn't. From the reply brief and the supplemental brief and from the argument, it's become clear now that the city's position is that the review the court should undertake is essentially the review that you would do from a denial of a judgment for a motion as a matter of law under Rule 50. Well, that's their argument, as I understand it. Right. That's the only argument that really worked. That's right. And so in essence, that's really just a way of circling back to substantial evidence review. So that's where we stand, is that you have to look at the whole record. And the problem that I have from in the briefing and listening to the argument is that the city never comes to grips with all the facts. It's my understanding that if you're going to come before an appellate court and say the judgment's not supported by substantial evidence, it's incumbent on you to lay out all the evidence and say when you lay out all the evidence and you construe it in the manner most favorable to the verdict, that's not sufficient. You're not allowed to just pick and choose, present your own version of the facts and say if under these facts the jury had gone our way, you'd have to affirm that, and because they misconstrued their standard review, their opening brief and their entire presentation is simply that approach. It's not a full version of the facts. I think it's very clear that after you read the blue brief, then you read the red brief, you learn a lot more about the case. There are a lot more facts. I'd like to respond specifically to the argument counsel sort of threw down the gauntlet and said I'd like to hear what the evidence on causation is. I'm going to read the blue brief, the city's brief, because it says, starting in the first full paragraph, that Deputy District Attorney Lasecki testified repeatedly that she and her colleagues made an independent decision after their independent investigation free of any pressure from Chief Parks or the LAPD's task force to have the accused officers arrested and to charge them. And then the next sentence is key. She considered the evidence provided to her by the task force and additional evidence such as testimony adduced at grand jury proceedings. The city concedes that the task force evidence was part of what the district attorney was considering. Detective Barling's testimony was that the task force was unique in his word because the LAPD and the district attorneys worked together, hand in hand, to investigate. If the city wants to make a superseding cause argument, and they rely on causation on a state court case called Brewer v. Tieno, which has a very lengthy discussion of superseding cause and it goes into the restatement. Well, one of the restatement requirements for superseding cause is that the superseding cause must operate independently from the initial wrongdoing. So what we have here is essentially it's a garbage in, garbage out situation. If the task force investigation is flawed, and that's what the jury found, then you don't have a superseding cause. So I think causation is clearly established. I'm particularly troubled by counsel's unwillingness to tether the argument to the actual facts in the record. So there are statements made in attacking the time stamp and the timeline saying that the helicopter, the testimony was that the helicopter pilots would have taken credit for the arrest if they had been on the scene and he had shined his light on Mr. Lobos and Lobos had surrendered. But that wasn't the testimony. No one said Mr. Liddy's report was not that when the helicopter arrived and shone his light, Mr. Lobos stood up in the spotlight. It was upon the arrival of the helicopter. Tyndall testified that when you could hear the helicopter, it was fair to say it arrived. So you hear the helicopter coming. Lobos realizes he's not going anywhere. He stands up and surrenders. Before the helicopter arrives, before the backup officers arrive. So there's no mystery about why the helicopter didn't see it happen. It hadn't shown its spotlight on it. There's no mystery about why the backup officers didn't see it, because they weren't there. Ultimately, I heard nothing in the opening brief, nothing from the city about why this record is insufficient as a matter of law to support the verdict. It just isn't. We didn't talk about damages. I guess the one thing I would want to point out, there was an article in the L.A. Times on October 12th, and I don't need to go, it was about this case. I don't need to go into the context. But what it said was that in the matter involving the police whose names have become synonymous with the corruption scandal, my clients' names have become synonymous with the corruption scandal. They're the brand of the Rampart scandal. And that's why it was appropriate for the jury to do what it did here. The record fully supports it. The testimony of the district attorney about what Chief Parks' motivation was and his decision was, that he hounded the district attorney, that his subordinates hounded the district attorney to file charges. And when the district attorney said, we don't want to file charges, we'll lose, we don't have a case, the chiefs made his agenda clear. We need to have a trial for public relations purposes. We need to put it past us. And when the district attorney said, we'll lose, the chief said it didn't matter because the purpose of the trial wasn't to gain a conviction. It was to make it appear to the public like the LAPD was moving on. That's a Monell violation, and the evidence fully supports the jury's verdict. I have a lot more time, but I don't think there's any... The law is very clear under Pembauer and the precedents that the single decision of the official policymaker, which is undisputed, that that's Chief Parks. He's the policymaker. So his official decision constitutes the kind of official policy that will trigger Monell liability. And I would submit that the jury's... about his conversations about being hounded, made it very clear for the jury to be able to conclude that the chief made a decision, that we need to have a trial, and that it didn't matter whether the charges would be sustained or not. The purpose was to have a trial. That's the official policy. That's a decision. We need to get somebody. We need to show the public that we're doing something. And the jury was perfectly within its rights, based on that testimony, to conclude that if the chief was hounding the DA, that similar parallel instructions were being sent downward to the task force about what the purpose of the task force was. We need a trial. You need to build a case against somebody. And that inference is fully supported by the flawed investigation, because this kind of investigation where the inferences... Every inference of guilt is drawn in favor of guilt, and every fact that suggests that there is no probable cause is ignored consistently. The jury was certainly within its rights to say that this investigation clearly had an agenda that there was no probable cause to believe that these officers had committed any crime whatsoever, that they relied on the uncorroborated testimony of Rafael Perez, who even in their briefs they say, no, we didn't, no, we didn't. But in the trial testimony, they asked the chief detectives Barling and Skaggs, did you rely as part of the probable cause determination on Rafael Perez's testimony? Absolutely. That was the word, Barling's testimony. Absolutely we considered it. Under the totality of the circumstances, which is I understand to mean all of the facts, the jury was clearly within its rights to find that there was no probable cause here. Let me just clarify a few procedural matters with you. As I understand it, there was no objection to any of the jury instructions. That's correct. And they're not challenged here on appeal. That's correct. So the only issue is whether these facts are sufficient. There are a few challenges to some evidentiary rulings that the district court made. There are. Do you care to address them? Well, I mean, we addressed them in the reply brief. I mean, some of them were made on a hearsay basis, which was withdrawn, and tried to be supported on inflammatory. And I think that that's too late to do that. I think it's clear that the testimony that they're sort of really focusing on, the testimony of Sergeant Pasquale, Sergeant Witch, these are peripheral actors. They're not the key actors in the case. Clearly, the testimony they were objecting to, the testimony of the entry of the administrative records. But if you read the opening statement of Mr. Goldfarb, the city's counsel, he gets up in front of the jury, and it was quite a shock to the plaintiff's lawyer because it was not supposed to happen this way, and essentially opened the door and started saying, well, these were really bad guys. They had done lots of things wrong. That's what he said. Really bad guys. They'd done lots and lots of things wrong. They had lots of administrative things going. There was testimony from he stated that the reason they were acquitted is because not all the witnesses testified. Some of the women who were detained at the scene were not called and didn't testify, and if they testified, the acquittal might not have happened. And that opened the door to the Harper administrative hearing where they did testify, and the result was even with their testimony, the panel concluded that there was no credible evidence against Officer Harper. So, in other words, I don't think there's, I think that was kind of the last argument they make and that there's really no way to tie that evidence to the real outcome here, which is, you know, that didn't inflame the jury. If this jury had been inflamed, they would have imposed punitive damages, and they didn't. I think it was very measured. Counsel asked for a $5 million verdict, and they returned a $5 million to $1 verdict. Did counsel ask for a $5 million for each plaintiff? Yes, $5 million for each. Well, doesn't that smack you as being somewhat a punitive damage result that the jurors came out exactly with the same amount of damages and a significant sum of money in respect to each defendant? I don't think so. In respect to each plaintiff. I don't think so. I mean, if that comes to, I don't think it's punitive. I think that it is commensurate with the level of wrong and the level of harm that the jury heard testimony about. And the district judge here made that finding when he denied the new trial motion. He said that the jury had substantial evidence to conclude that the LAPD arrested these officers without cause and ruined their lives. You say level of wrong. Level of harm, it seems, deals with damages. Level of wrong, something that smacks me more than the result. You're right. And I misspoke. I mean, I can go into detail. We did in the brief to the level of harm. I mean, these men's lives were ruined. I mean, each one of them had significant physical and emotional difficulties that they haven't recovered from. And I think that there were two things that I thought were the most powerful points that I could make about the damages. One is I thought that Judge Carney's statements when he denied the motion. He sat through all the evidence. He heard it. And he said it's a substantial amount of money, but it's not excessive. And I think that that's important. The second thing that I think is perhaps more important is that when we filed our brief and laid out all of the harm that supported the evidence, the city had, in the reply brief, I mean, literally not to address it, and just said, we have nothing to say. Please look to our original brief. So we gave them last word, and they had nothing to say. Well, they don't seem to really focus on excessiveness. They don't do an excessiveness comparison in terms of similar cases, that type of analysis. They just seem to relegate their argument to the lack of apportionment between the three plaintiffs. Am I correct about that? That's my understanding. And I think that's a, you know, that was an argument they made to the jury. The jury listened to it, listened to all the evidence, heard the evidence about the impact that it had, the events had on these officers' lives, and returned a verdict. I don't think it was a punitive verdict. If they wanted to be punitive, they would have found malice, oppression, and would have tried to impose punitive damage. Was there a separate proceeding on the issue of punitive damage? It was one of the questions on the jury forum. And they answered no in the same jury forum. No punitive damage. No punitive damages. So with that, I would urge and believe it's fully appropriate as an affirmance in all respects. Thank you. Mr. Horwath, I'll give you a minute or two. Thank you, Tommy. I have just a minute or two in quick succession. I would just again refer the Court to our recitation of what we believe are undisputed facts as to probable cause at pages 44 to 50 of our opening brief. As to causation, I think what counsel is suggesting just calls for speculation as to the effect of Chief Park's statements on D.A. Garcetti, when Garcetti specifically says he wasn't affected by it, they made their own determination, and the effect of the LAPD's investigation on the deputies and their investigators, again, is speculation, because there is nothing to corroborate that it had any effect. When counsel refers to the facts we stated at page 31 of our opening brief, when I stated that they had the district attorney's office have the same evidence as the LAPD presented to them, perhaps I should have added, which I think was clear in any event, it's because they were conducting a parallel investigation and that indeed their investigation went further because they were able to adduce evidence from a presentation to the grand jury, which the LAPD could not do. We're not trying to mislead the Court and say, you know, speak out of our mouth on one side here and one side there. As to the policy issue, which I believe I've briefed pretty well, again, you're taking statements as to what Chief Park said largely to private conversation with the district attorney, which really, I do not believe, measures up to evidence of a policy. And in addition to that, his statements, many of which were relied upon by the plaintiffs, were made before this case arose and didn't deal directly with these particular plaintiffs. And finally, as to damage to the practical matter, given the serious nature of this case, do you have to mention the word policy, do you have some sort of a sense that you really had an obligation to the public perhaps to take an appeal here because of the significant amount of monies and the very incendiary nature of this case? Yes, exactly. I think part of the Chief's job description is to respond publicly to scandals. And he was responding much more to your point. By appealing here, that's consistent with your view that you have some sort of responsibility to the public to really flush this out on an appellate level. His statements before these officers were investigated or whatever and afterwards, one, were opinions. Two, he's trying to assure the public that the police department of the second largest city in the country recognizes there's a problem here and we're trying to do something about it, we're looking into it. It doesn't say that I have initiated a policy that nail anyone you can. And, again, to the extent that the other side is relying on statements he made privately to the district attorney, and I think the district attorney testified, again, without dispute, that there were some political problems between Chief Parks and the district attorney at the time, that those statements were not evidence of policy, general policy to charge people. I guess I did not take that by question. I just wonder whether it's a policy that governs your decision when to appeal. That's what I was concerned about. Well, to the extent that there's a suggestion, and I believe at least there's a suggestion, that denying the charges that the plaintiffs are making, that denying them in the trial court and, again, on appeal somehow ratifies the initial policy, flies in the face of our adversary system and due process. Finally, with regard to damages, one, I would call the court's attention, again, that extra dollar that the jurors put in had to be sending a message that it did not, the jury found no malice on the part of Chief Parks. They were not allowed, the other officers involved in the investigation were not even sued. So the jury might have found malice as to them, but not as to Chief Parks, and again, as to damages, the recitation that they suffered, the plaintiffs suffered severe emotional distress and physical harm and so forth, and still do to today. You're over your time. There's no expert. You're way over your time, Mr. Horowitz. We appreciate your argument. Thank you so much. Thank you. This order will be submitted. All rise. This court shall stand in recess until tomorrow morning. Thank you.
judges: Farris, Paez, Block